**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**

November 30, 2006

Agnes S. Wladyka
Abromson & Carey
60 Park Place, Suite 601
Newark, NJ 07102

    (*Attorney for Plaintiff*)

Christopher J. Christie
United States Attorney
Tomasina DiGrigoli
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

    (*Attorney for Defendant*)

    RE:    <u>Lee v. Commissioner of Social Security</u>
            <u>Civ. No. 05-2054 (WJM)</u>

Dear Counsel:

    Plaintiff Debra Lee ("Lee") brings this action pursuant to 42 U.S.C. § 405(g) (2006) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). There was no oral argument. Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

**Background and Procedural History**

Lee applied for DIB on February 22, 2000, alleging disability due to two herniated discs in her neck. (Tr. at 39-43.) This application was denied initially and on reconsideration. In a hearing decision dated January 25, 2002, Administrative Law Judge Dennis O'Leary (the "ALJ") found that Lee was not disabled. (Tr. at 18.) Lee requested review by the Appeals Council, which was denied in a decision dated September 27, 2002. (Tr. at 5.) An action was filed in this District, and on June 6, 2003 the Honorable John W. Bissell issued a consent order remanding the case to the Commissioner for further administrative proceedings. (Tr. at 252.) An order by the Appeals Council on July 23, 2003 vacated the final decision of the Commissioner and remanded the case, with specific notes. First, the Appeals Council noted that the ALJ's decision as to Lee's residual functional capacity did not contain a function-by-function assessment of Lee's ability to perform work-related physical activities or a rationale with specific references to evidence of record in support of the assessed limitations. (Tr. at 253.) Specifically, the Appeals Council stated that the decision did not cite evidence to support Lee's manipulative limitations. (Tr. at 253.) The Appeals Council also noted that the testimony of Vocational Expert Rocco Meola (the "VE") on the availability and suitability of work for Lee appeared to conflict in some respects with the Dictionary of Occupational Titles ("DOT"). (Tr. at 253.)

A hearing was held before the ALJ on October 14, 2003, which included new testimony from the VE as well as from Lee. (Tr. at 278-318.) Dr. Martin Fechner also testified as an impartial medical expert. (Tr. at 291-303.) Additionally, all of the evidence presented at the first hearing was incorporated into the record before the ALJ. (Tr. at 283.)

In a decision dated October 30, 2003, the ALJ denied Lee's application for benefits. (Tr. at 230-42.) Applying the familiar five-step analysis for determining whether a claimant is disabled, the ALJ first found that Lee had not engaged in any substantial gainful activity since her alleged onset date of November 3, 1999. (Tr. at 234.) Then, at step two, he found that Lee's impairments (i.e., tendinitis and impingement syndrome) were severe. (Tr. at 235.) At step three, he determined that Lee's impairments did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 235-238.) Next, at step four, the ALJ determined that Lee retained the residual functional capacity to perform a limited range of sedentary work. (Tr. at 238-239.) Finally, at step five, the ALJ found that work existed in significant numbers in the national economy that Lee could perform. (Tr. at 240.) Therefore, the ALJ determined that Lee was not disabled and, accordingly, not entitled to DIB. (Tr. at 240.) The Appeals Council denied review on February 22, 2005. (Tr. at 218-21.)

Lee appeals this ruling. She argues that (1) the ALJ's finding that her impairments do not meet or equal a listing is in error, and is based on an improper evaluation of the relevant medical evidence; (2) the ALJ improperly assessed the credibility of her complaints; (3) the ALJ erred in finding that she is capable of performing a limited range of sedentary work. This appeal is now before the Court.

## Standard of Review

In reviewing ALJ O'Leary's decision, the district court exercises plenary review over his legal conclusions and is bound by his factual findings that are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), as the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Woody v. Secretary of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

## Discussion

### A.   Credibility of Lee's Complaints of Pain

Lee first argues on appeal that the ALJ improperly discredited her subjective complaints of pain. In his opinion, the ALJ found Lee's allegations "not totally credible." (Tr. at 241.) It is well-established that an ALJ is required to determine the extent to which the claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). Under the current statutory regime, a claimant's statements about her pain do not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c). Rather, a disability must be proven through objective medical evidence. Furthermore, the ALJ should consider a claimant's daily activities, the location, frequency, and intensity of the pain and symptoms, the type and dosage of pain medication, and any other measures used to relieve the alleged pain. 20 C.F.R. § 404.1529(c)(3). In making such determinations, the ALJ is given great discretion, and his findings are entitled to judicial deference. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

Here, the ALJ's analysis of Lee's complaints of pain was supported by substantial evidence. In his discussion of Lee's complaints, the ALJ determined that objective evidence contradicted her complaints of pain. Specifically, the ALJ noted that (1) Lee does not get regular treatment for her condition; (2) she takes public transportation and is able to care for her own needs; (3) although earlier medical evidence had showed mild carpal tunnel syndrome, the most recent tests showed no evidence of carpal tunnel syndrome; (4) x-rays taken of Lee's hands in November 2001 were normal; (5) an MRI showed "mild" thecal sac encroachment, but no disc herniation; (6) the clinical findings tended to refute both carpal tunnel syndrome and reflex sympathetic dystrophy. (Tr. at 239.) The ALJ also noted Dr. Fechner's opinion that Lee could

perform work with the residual functional capacity determined by the ALJ. (Tr. at 239.) Finally, the ALJ noted that Lee's status with the Post Office was in the grievance process because the Post Office was attempting to fire her, which suggested that Lee felt she could do work or would not be fighting to stay employed. (Tr. at 239.) Based on the foregoing, it is clear that the ALJ's decision to discount the credibility of Lee's subjective complaints of pain was based on substantial evidence.[1]

Lee, though, takes issue with one of the ALJ's determinations regarding her credibility. In particular, she argues that the ALJ's deductive reasoning regarding her filing of a grievance with the Post Office is flawed. According to Lee, the ALJ failed to consider that her filing of the grievance may have signaled merely a desire to retire on disability, rather than an admission that she was capable of returning to work. (Plaintiff's Brief ("Pl. Br.") at 13.) The Court, however, does not find the ALJ's statement fatal to his decision. Even disregarding this factor, substantial evidence still exists in the record to support the ALJ's determination that Lee's subjective complaints are not entirely credible. The other specific factors cited by the ALJ are appropriate and significant considerations in assessing a claimant's credibility in the context of the record as a whole. In addition, the record contains further support for the ALJ's credibility determination.

In sum, given the ALJ's thorough discussion, we cannot find that ALJ O'Leary failed to specify his reasons for discounting Lee's subjective assertions of pain nor failed to support his conclusions with medical evidence on the record. Therefore, the Court finds that the ALJ's decision to discount Lee's credibility was supported by substantial evidence.

### B.     The ALJ's Assessment of Medical Evidence

Lee next argues that the ALJ's assessment of the medical evidence is not supported by substantial evidence. In particular, she argues that (1) the ALJ failed to determine whether her impairments meet or equal Listing § 1.04 of Appendix 1; (2) even if those categories are not satisfied, her individual impairments taken together equal a listing; and (3) the ALJ failed to consider her obesity and its effect on her orthopaedic impairments.

### 1.      Whether Lee's Impairment "Meets or Equals" Listing § 1.04 of Appendix 1

Lee first argues that the ALJ's opinion is deficient at step three in that he failed to explore whether Lee's impairments fell within the category of impairments listed at § 1.04 of Appendix I.

---

[1] The Court also notes one piece of evidence not mentioned by the ALJ. Specifically, the Court notes a comment in the record by George L. Gabriel, a physical therapist who had nine sessions with Lee ending in 2001. In describing Lee's complaints of pain, Gabriel notes his impression that Lee's "function appears greater than subjective reports." (Tr. at 156, 178.) This would lend further support to the ALJ's decision that Lee's complaints of pain were not entirely credible.

4

(Pl. Br. at 16-18.)  This listing states:

>Disorders of the spine  (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.  Although the ALJ did not specifically address this particular listing in his step-three analysis, the Court concludes that his decision is nonetheless based upon substantial evidence.

In *Burnett v. Commissioner of Social Security*, the Third Circuit held that the ALJ must "set forth the reasons for his decision," and that an ALJ's bare conclusory statement that an impairment did not match, or is not equivalent to, a listed impairment was insufficient.  *See* 220 F.3d 112, 119-20 (3d Cir. 2000).  In *Jones v. Barnhart*, the Third Circuit held that a reviewing court must look at the ALJ's decision as a whole to determine whether the ALJ "considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing."  364 F.3d 501, 505 (3d Cir. 2004).  The ALJ is not required to use "magic words" in his analysis or adhere to a particular format; rather, the law simply requires "that the record be developed sufficiently to permit meaningful appellate review."  *See Sassone v. Commisioner*, 165 Fed. Appx. 954, 959 (3d Cir. 2006) (citing *Jones*, 364 F.3d at 505).

At step three of the five-step process for evaluating disability claims, the ALJ concluded that while Lee's impairments were severe, they were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. at 235.)  While the ALJ did not identify precisely which listing might have been applicable to Lee's impairments, it is clear from his detailed step three analysis that he was equally focused on the evidence relevant to the listing at § 1.04.  ALJ O'Leary devoted nearly four pages of significant discussion to summarizing, weighing and evaluating the medical evidence and Lee's testimony on issues relevant to the symptoms described in § 1.04, including sensory function, MRI results indicating disc bulges, and results of straight-leg raising tests.  (Tr. at 235-38.)  The ALJ's discussion provides sufficient analysis of the medical evidence and Lee's testimony to permit meaningful judicial review by this Court.  In particular, after noting that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment," the ALJ engaged in a detailed discussion of the medical evidence and Lee's

5

testimony. (Tr. at 235-38.) The ALJ specifically cited Dr. Fechner, an unbiased medical expert, who after reviewing the file and Lee's testimony opined that Lee's impairments did not meet or equal any listing. (Tr. at 238.)

Accordingly, the Court finds no error in the ALJ's failure to specifically cite or make reference to Listing § 1.04.

### 2. Failure to Consider the Combined Effect of Her Impairments

Lee next argues that the ALJ erred by not considering whether the cumulative effect of her impairments equal a listing. (Pl. Br. at 18.) Generally, an ALJ must analyze the cumulative effect of all of a claimant's impairments in determining whether she is capable of performing work or is disabled. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (citing 20 C.F.R. § 1523). Despite Lee's contention, it is clear from the ALJ's decision that he considered Lee's tendinitis and impingement syndrome together since he discussed them in conjunction with each other in his step three analysis. (*See* Tr. at 235-238.) In particular, at step three, the ALJ discussed together the opinions of various doctors who examined Lee for tendinitis and impingement, in addition to numerous other symptoms and diagnoses of non-severe impairments. (*See* Tr. at 235-238.) Upon review of this analysis, the Court cannot conclude that the ALJ failed to consider Lee's impairments in combination when making his findings at step three.

### 3. The ALJ's Failure to Consider Lee's Obesity

Finally, Lee argues that the ALJ failed to evaluate her obesity and its effect on her orthopaedic impairments, noting that "obesity is often associated with disturbance of the respiratory system," and that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately." (Pl. Br. at 17-18.) These arguments are misplaced. First, Lee did not allege disability due to any respiratory impairment, and there is no evidence of any significant respiratory impairment in the record. Second, Lee did not allege disability due to obesity. Although several physicians refer to Lee's weight condition in their reports, noting without further discussion that Lee is "slightly obese," "mildly obese," or "moderately obese" (Tr. at 92, 113, 118), the record contains no mention of a physician diagnosing or treating Lee for obesity, nor does it contain any objective medical evidence linking Lee's weight condition to any impairment or disability. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Moreover, because Lee's physicians were aware of her weight problem and noted her weight condition in the record, "the ALJ's discussion and adoption of their medical conclusions constitutes, at a minimum, an 'indirect consideration' and rejection" of Lee's weight condition in his disability analysis. *See Sassone*, 165 Fed. Appx. at 958 (citing *Rutherford*, 399 F.3d at 553). Accordingly, the Court does not find Lee's argument on this point persuasive.

In sum, the Court does not find that the ALJ erred in his assessment of the medical

6

evidence.  Therefore, Lee's argument on this ground is denied.

        **C.**     **The ALJ's Analysis of Lee's Ability to Work**

Lee next argues that the ALJ erred in finding that she is able to perform a limited range of sedentary work.  (Pl. Br. at 18-20.)  Specifically, she alleges that (1) the ALJ's assessment of her RFC at step four was conclusory and unsupported, and (2) the ALJ erred in relying on the VE's testimony at step five.

               **1.**     **The ALJ's Determination of Lee's RFC**

Residual functional capacity is an administrative assessment of the most work a claimant is able to perform given the limitations imposed by her impairment.  20 C.F.R. §§ 404.1545 and 416.945; Soc. Sec. Ruling 96-8p.  "In making a residual functional capacity determination, the ALJ must consider all evidence before him.  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence."  *Burnett*, 220 F.3d at 121.

In his discussion at step four, the ALJ began by defining "residual functional capacity" and listing the various factors to be considered in determining a claimant's RFC.  (Tr. at 238, citing 20 C.F.R. §404.1529; Soc. Sec. Ruling 96-7p.)  The ALJ also listed the evidence that can be relied upon in weighing these various factors.  (Tr. at 238, citing 20 C.F.R. § 404.1527; Soc. Sec. Ruling 96-2p; Soc. Sec. Ruling 96-6p.)  The ALJ then made particularized findings as to Lee's capabilities and concluded that Lee retained an RFC to perform a limited range of sedentary work.  (Tr. at 238-39.)

In determining Lee's specific limitations, the ALJ adopted the testimony of Dr. Fechner, an impartial medical expert who had conducted a complete review of the medical evidence and also had the opportunity to hear Lee's testimony.  (Tr. at 238-39, 305.)  The ALJ concluded that Lee could not raise her arms above her head.  (Tr. at 238.)  Furthermore, he found that she could only use her upper extremities 2/3 of the day for repetitive manipulations, 1/2 of which she could perform repetitive fine manipulation and 1/2 of which she could perform repetitive gross manipulation.  (Tr. at 238-39.)  The remaining 1/3 of the day, Lee could perform occasional but non-repetitive movements, such as answering a telephone.  (Tr. at 239.)

Lee argues that this RFC is conclusory and unsupported by the medical evidence, and represents the ALJ's substitution of his own layman's opinion for that of a medical expert.  (Pl. Br. at 19.)  The Court disagrees.  Dr. Fechner was the only doctor to offer a specific, function-by-function assessment of Lee's work-related abilities based on all the relevant medical evidence and testimony.  On those particulars, Dr. Fechner's testimony was the only evidence before the ALJ aside from Lee's own testimony, which was properly discounted.  Dr. Fechner's testimony was unbiased and was supported by the objective medical evidence, including the findings of Dr. Gary Sclar and Dr. Louis Rizio.  (Tr. at 113-15, 131-32.)  Furthermore, the ALJ offered specific

reasons for not according significant weight to the February 2000 opinion by treating physician Dr. Monica Mehta that "the likelihood this patient will be completely disabled from any gainful employment is high," noting that Dr. Mehta's assessment of disability was merely a prediction, and was unsupported by either her own objective findings or the medical record as a whole.  (Tr. at 94, 236.)

Consequently, the Court finds that the ALJ's RFC determination was based upon substantial evidence.

### 2. The ALJ's Determination that Lee Can Perform Other Work

Having determined Lee's RFC and concluded that Lee was unable to perform her past relevant work, the ALJ sought advice from the Vocational Expert at step five as to whether there were any jobs that an individual of Lee's age, education, experience and RFC could perform. (Tr. at 304-05.)  The VE testified that Lee could perform the unskilled, sedentary jobs of surveillance monitor, registration clerk and information clerk, all of which existed in significant numbers in the national and local economy.  (Tr. at 305-06.)  The VE testified that Based upon this testimony and with reference to Rule 201.27 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that Lee could perform other work that existed in significant numbers in the national economy, and was therefore not disabled. (Tr. at 240.)

Lee argues that the ALJ failed to present a full and fair hypothetical to the VE, and that the ALJ's reliance on the VE's testimony was therefore misplaced.  (Pl. Br. at 19-20.)  However, the ALJ's hypothetical questions were consistent with his RFC.  (Tr. at 304-05.)  As discussed *supra*, the ALJ's partial rejection of Lee's subjective complaints was supported by substantial evidence.  The ALJ fully and fairly incorporated the remaining, credibly established impairments into his RFC and subsequently into his hypothetical questions to the VE.[2]  This meets the Third Circuit's requirements.  *See Plummer*, 181 F.3d at 431 (3d Cir. 1999).

Lee also points out that in its remand order, the Appeals Council had noted that the VE's testimony in the first hearing on the appropriateness of certain jobs appeared to conflict in some respects with the Dictionary of Occupational Titles ("DOT"), and alleges that this problem was not resolved in the second hearing on October 14, 2003.  (Pl. Br. at 19-20; Tr. at 253.)  This argument is without merit.  At the second hearing, the ALJ presented the VE with a new hypothetical, incorporating an RFC that was revised to reflect new testimony by Dr. Fechner. (Tr. at 304-05.)  In response, the VE offered a modified selection of jobs. (Tr. at 304-05.)  For

---

[2] Although the VE testified that under hypotheticals posed by Lee, the job base would be narrowed to practically non-existent, and that an employer would not hire an individual who could only use her hands for 20 minutes out of every half hour, those hypotheticals were based on Lee's alleged limitations, which the ALJ justifiably rejected in formulating his RFC. (Tr. at 311-12.)

8

each of these jobs, the ALJ thoroughly questioned the VE regarding possible inconsistencies with the DOT, as required by Social Security Ruling 00-4p, and was within his rights to credit the VE's testimony as to the actual requirements of each position. (Tr. at 305-10.) *See* Soc. Sec. Ruling 00-4p ("Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information."); *Jones*, 364 F.3d at 506 n.6 (3d Cir. 2004) ("This Court has not adopted a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal.").

Therefore, we cannot conclude that the ALJ's determination that Lee retained an RFC to perform a limited range of sedentary work, and was therefore not disabled, is unsupported by substantial evidence.

## **Conclusion**

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**. An appropriate Order accompanies this Letter Opinion.

s/William J. Martini  
**William J. Martini, U.S.D.J.**
